**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

FILED

APR 11 2012

UNITED STATES OF AMERICA FOR
THE USE AND BENEFIT OF PROBUILD
COMPANY, LLC, et al.,

       Plaintiffs,

v.                              Case No.: 2:11cv451

EDMOND SCARBOROUGH, et al.,

       Defendants.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff ProBuild Company, LLC's ("ProBuild") Motion for Default Judgment Against Defendants Tommy Abbott & Associates, Inc. and Wendel Hartman. ECF No. 17. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), ProBuild's motion was referred to the undersigned United States Magistrate Judge. ECF No. 19. Based on ProBuild's arguments at hearing, the record, and the findings contained herein, the undersigned RECOMMENDS that ProBuild's motion for default judgment be GRANTED and that default judgment be entered against Defendants Tommy Abbott & Associates, Inc. and Wendel Hartman.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs in this matter are the United States of America for the use and benefit of ProBuild Company, LLC, and ProBuild Company, LLC.  On August 12, 2011, ProBuild filed a Complaint against

Defendants Edmund Scarborough ("Scarborough"), Tommy Abbott & Associates, Inc. ("TAA"), Tommy Abbott ("Abbott"), and Wendel Hartman ("Hartman"). Count I of the Complaint seeks relief against TAA and Scarborough for violations of the Miller Act, 40 U.S.C. §§ 3131 et. seq. Compl. 1-2, ECF No. 1. Count II of the Complaint seeks relief against TAA, Abbott, and Hartman under the terms of agreements that the defendants executed in favor of ProBuild. Id. at 4. ProBuild seeks $46,661.98 plus interest for unpaid invoices and reasonable attorney's fees of $11,665.00.

According to ProBuild's Complaint, TAA entered into a contract with the United States Department of the Navy to perform construction on the "Dam Neck Cottages" in the City of Virginia Beach, Virginia (the "Project"). Id. ¶ 2. Pursuant to the Miller Act, TAA furnished a payment bond to the United States for the value of the contract. Compl. ¶¶ 3-4; Pl.'s Resp. to March 2, 2012 Ct. Order 3, ECF No. 27 at 3.[1] TAA is the principal on the bond and Edmund Scarborough is the surety. Compl. ¶ 3; ECF No. 27 at 3.

On November 4, 2010, TAA applied to ProBuild for a line of credit. Compl. ¶ 12; ECF No. 27 at 7. ProBuild entered into a

---

[1] By Order dated March 2, 2012, the Court directed ProBuild to file "fully executed originals, or if unavailable, entirely legible copies" of the payment bond, commercial credit application, credit agreement, and personal guaranty at issue in this matter. ECF No. 23. ProBuild filed said documents on March 27, 2012. Pl.'s Resp. to March 2, 2012 Ct. Order, ECF No. 27. Unless otherwise stated, all references to said documents are to the versions filed on March 27, 2012, (ECF No. 27), in response to the Court's March 2, 2012 Order.

Credit Agreement with TAA, which was to govern future transactions between ProBuild and TAA. Compl. ¶ 12; ECF No. 27 at 8. Abbott signed the Credit Agreement as Secretary and Treasurer of TAA, and Hartman signed as Vice President of TAA. Compl ¶ 12. As part of the Credit Agreement transaction, Abbott and Hartman executed a Personal Guaranty whereby they agreed to be jointly and severally liable for the debts and obligations of TAA under the Credit Agreement, including "all invoiced amounts, all default interest on any delinquent invoices and all costs of collecting delinquent invoices and default interest, including court costs, reasonable attorney fees, and collection agency fees . . . ." Compl. ¶ 13; ECF No. 27 at 9. Between November 2010 and March 2011, ProBuild supplied materials and supplies to TAA for use on the Project. Compl. ¶ 5.

ProBuild alleges that although TAA made payments on Project invoices from time to time, TAA left an unpaid balance on its account, the principal of which is $46,661.98. Id. ¶ 16. ProBuild alleges that it made demands for amounts owing on TAA, Abbott, and Hartman and that the defendants have refused to pay. Id. ¶ 15. On August 12, 2011, ProBuild filed its Complaint in this Court.

TAA is incorporated under the laws of Tennessee. Abbott and Hartman are residents of Tennessee. Scarborough is a resident of Virginia. Pursuant to Virginia Code § 8.01-329, ProBuild served process on TAA, Abbott, and Hartman through the Secretary of the

-3-

Commonwealth on August 19, 2011. ECF No. 7. On August 29, 2011, the Clerk of the Secretary of the Commonwealth issued a Certificate of Compliance, which was filed with the Court on August 31, 2011. Id. ProBuild personally served Scarborough on August 30, 2011, and filed an executed summons with the Court on September 13, 2011. ECF No. 8.

On September 19, 2011, Scarborough filed an Answer to ProBuild's Complaint. ECF No. 9. On January 3, 2012, the Court sent a notice to ProBuild requesting a status report or that ProBuild file a notice of voluntary dismissal with respect to Defendants TAA, Abbott, and Hartman. ECF No. 13. On January 11, 2012, ProBuild filed a Notice of Voluntary Dismissal as to Abbott[2] and a Request for Entry of Default as to TAA and Hartman. ECF Nos. 14-15. On January 12, 2012, the Clerk entered default against TAA and Hartman pursuant to Federal Rule of Civil Procedure 55(a). ECF No. 16.  ProBuild filed a Motion for Default Judgment Against Defendants Tommy Abbott & Associates, Inc. and Wendel Hartman pursuant to Rule 55(b) on January 17, 2012. ECF No. 17.

On February 10, 2012, this Court issued an Order directing ProBuild to set a hearing date for its motion and to notify all parties of said date.  ECF No. 20.  The Order also directed ProBuild to submit any documentation in support of its claim for damages. ProBuild complied with the Order, and the Court conducted

---

[2] Abbott was apparently in bankruptcy at the time.  ECF No. 14.

a hearing on March 2, 2012, at 11:30 a.m.  Glen William Thompson, Esq., appeared at the hearing on behalf of ProBuild. Michael M. Miles, Esq., and Constantinos George Panagopolous, Esq., appeared on behalf of Scarborough. Both TAA and Hartman failed to appear. Heidi Jeffreys was the official court reporter.[3]

## II.  **Rule 55 Standard**

When a party against whom judgment is sought fails to file a responsive pleading or otherwise defend the action, the plaintiff may request, and the court may enter, default judgment against the nonresponsive party.  Fed. R. Civ. P. 55.  TAA and Hartman have failed to file responsive pleadings or appear in this matter.  See Fed. R. Civ. P. 12(a) (giving a defendant 21 days after receiving service of the complaint to serve an answer).  Pursuant to Rule 55(a), ProBuild requested the Clerk of the Court to enter default against TAA and Hartman on January 11, 2012.  ECF No. 15.  The Clerk entered default against TAA and Hartman on January 12, 2012, and ProBuild moved for default judgment against them on January 17, 2012.

---

[3] At hearing, counsel for ProBuild indicated that ProBuild sought default against TAA and Hartman pursuant only to Count II of the Complaint.  Subsequent to the hearing, the Court issued an Order directing ProBuild to, among other things, advise the Court in writing of its intention to seek default against TAA pursuant to Count I and II or merely Count II of the Complaint. In compliance with the Court's Order, ProBuild has advised the Court that it seeks default judgment against TAA pursuant to Counts I and II and against Hartman pursuant to Count II only.  ECF No. 27 at 2.

## III. JURISDICTION AND VENUE

### A. Subject Matter Jurisdiction

The Court must have subject matter jurisdiction over the case and personal jurisdiction over the defaulting parties before it can render a default judgment. Venue must also be proper. The Court has subject matter jurisdiction over ProBuild's Miller Act claim pursuant to 28 U.S.C. § 1331.

ProBuild asserts that the Court has "pendent jurisdiction" over the state-law claims in Count II, presumably pursuant to 28 U.S.C. § 1367, which grants district courts supplemental jurisdiction over state-law "claims that are so related to claims in the action within such original jurisdiction [of the district court] that they form part of the same case or controversy under Article III of the United States Constitution."[4] 28 U.S.C. § 1367(a); see Wis. Dep't of Corrections v. Schacht, 524 U.S. 381, 387 (1998).

A state-law claim satisfies the "same case or controversy" requirement if it and the federal claim over which the court has original jurisdiction "derive from a common nucleus of operative fact." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966). Neither ProBuild's Complaint nor its Motion for Default

---

[4] 28 U.S.C. § 1367 collapses the historically recognized doctrines of pendant and ancillary jurisdiction, speaking in broad terms of supplemental jurisdiction. See Exxon Mobile Corp. v. Allapattah Servs., Inc., 454 U.S. 546 (2005).

Judgment specifically argue that Count II derives from the same nucleus of operative fact as Count I, but the facts in ProBuild's Complaint indicate that it does.

ProBuild supplied materials to TAA for the Project pursuant to the Credit Agreement. Compl. ¶ 5. ProBuild entered into the Credit Agreement with TAA based on the assurances provided by Abbott and Hartman in the Personal Guaranty. Compl. ¶ 13. TAA's alleged failure to pay for materials that ProBuild supplied for the Project is the basis of ProBuild's Miller Act claim and the basis for TAA, Abbott, and Hartman's liability under the relevant agreements. Because ProBuild's Miller Act and state-law claims arise out of a common nucleus of operative fact, the Court may exercise jurisdiction over Count II of ProBuild's Complaint pursuant to 28 U.S.C. § 1367.

### B. Personal Jurisdiction

Neither ProBuild's Complaint nor its Motion for Default Judgment alleges facts in support of this Court's ability to exercise personal jurisdiction over TAA and Hartman. Nevertheless, it appears that TAA and Hartman have consented to personal jurisdiction in this Court. See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982) ("Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived."). The Credit Agreement and Personal Guaranty each contain forum selection

-7-

clauses stating that "[a]ny lawsuits resulting from this extension of credit may be commenced in the county where the shipment of goods originated." ECF No. 27 at 8-9. The invoices that ProBuild summited in support of its request for damages indicate that the goods for which TAA has allegedly failed to pay originated from ProBuild's retailer in Chesapeake, Virginia, which is in the Eastern District of Virginia. Pl.'s Resp. to Feb. 10, 2012 Ct. Order at 4, ECF No. 22. No party has alleged that the terms of the forum selection clause are invalid, and parties may waive personal jurisdiction by agreement. See Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 316 (1964) ("[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court."); Smith-Johnson Motor Corp. v. Hoffman Motors Corp., 411 F. Supp. 670, 675 (D.C. Va. 1975) ("[T]he provisions of a contract fixing the forum in which actions might be brought to litigate disputes is binding on the parties unless the opposing party can meet the heavy burden of showing that its enforcement would be unreasonable, unfair or unjust."). Accordingly, the Court finds that TAA and Hartman have consented to this Court's exercise of personal jurisdiction over them.

In spite of the forum selection clauses in the Credit Agreement and Personal Guaranty, personal jurisdiction is not proper in the absence of effective service of process. See Fed. Deposit Ins. Corp. v. Schaffer, 731 F.2d 1134, 135 (4th Cir. 1984);

Md. State Fireman's Ass'n v. Chaves, 166 F.R.D. 353, 354 (D. Md. 1996) ("It is axiomatic that service of process must be effective under the Federal Rules of Civil Procedure before a default or a default judgment may be entered against a defendant."). The Federal Rules authorize service of process on non-resident individuals and corporations by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1), (h)(1)(A).

Pursuant to Virginia Code § 8.01-329, ProBuild served process on TAA and Hartman through the Secretary of the Commonwealth on August 19, 2011. On August 29, 2011, the Clerk of the Secretary of the Commonwealth issued a Certificate of Compliance, which was filed with the Court on August 31, 2011. ECF No. 7. Accordingly, the Court finds that ProBuild has properly served TAA and Hartman and that this Court may exercise personal jurisdiction over them.[5]

### C. Venue

Venue is proper in this Court pursuant to 40 U.S.C. § 3133(b)(3)(B), which allows plaintiffs to bring Miller Act claims in "the United States District Court for any district in which the contract [is] to be performed or executed, regardless of the amount

---

[5] The Court notes that TAA and Hartman remain free to challenge the entry of default "judgment on jurisdiction grounds in a collateral proceeding." Insurance Corp. of Ireland, 456 U.S. at 706; see Fed. R. Civ. P. 60(b).

-9-

in controversy." TAA contracted to provide construction services on the Project in this judicial district. The forum selection clauses of the Credit Agreement and Personal Guaranty also make venue in this forum proper. See Vulcan Chemical Techs., Inc. v. Barker, 297 F.3d 332, 339 (4th Cir. 2002) ("[A]bsent a showing that the chosen forum is unreasonable or was imposed by fraud or unequal bargaining power, the parties' choice should be enforced.") (citing Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972)).

## IV.  **ANALYSIS OF PROBUILD'S COMPLAINT**

Although grounds for entering default judgment against TAA and Hartman exist, the Court must nevertheless determine whether ProBuild's Complaint states a claim upon which relief can be granted. See Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians, 155 F.3d 500, 506 (4th Cir. 1998) (holding that district court erred in granting default judgment to plaintiff where plaintiff failed to state a claim); GlobalSantaFe Corp., 250 F. Supp. 2d at 612 n.3 ("Upon default . . . the appropriate inquiry is whether the facts alleged [in the complaint] state a claim.").

Rule 8 of the Federal Rules requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although the Court "must accept the facts alleged in a complaint as true and construe them in the light most favorable to the plaintiff," Coleman v. Md. App., 626 F.3d 187, 188 (4th Cir. 2010), threadbare "legal

-10-

conclusion[s] . . . [are] not entitled to the assumption of truth." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).   Moreover, the well-pleaded facts of a complaint must permit the court to infer the plausibility rather than the mere possibility of misconduct entitling the plaintiff to relief. Id.; Coleman, 626 F.3d at 190; Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

## A. Sufficiency of Allegations in Count I

To state a valid Miller Act claim, a plaintiff must sufficiently allege that: (1) it supplied labor or materials "in carrying out work provided for in a contract for which a payment bond [was] furnished under section 3131;" (2) it has not been paid; (3) it had a good faith belief that the labor or materials supplied were intended for the specified work; and (4) the jurisdictional requisites of the Miller Act have been met. 40 U.S.C. § 3133(b)(1); U.S. ex rel. Polied Env't Servs. Inc., v. Incor Grp., Inc., 238 F. Supp. 2d 456, 460 (D. Conn. 2002).   Where the party seeking relief under the Miller Act has a direct contractual relationship with the party furnishing the payment bond, the only jurisdictional requisite at issue is whether the party filed suit within a year after "the day on which the last of the labor was performed or material was supplied . . . ." 40 U.S.C. § 3133(b)(4); see United States ex rel. Martin Steel Constructors, Inc. v. Avanti Constructors, Inc., 750 F.2d 759, 761 (9th Cir. 1984); compare 40 U.S.C. § 3133(b)(1) (providing elements of general right to civil

-11-

action) with 40 U.S.C. § 3133(b)(2) (providing specific notice requirements where the aggrieved party is a subcontractor without a direct contractual relationship with the contractor furnishing the payment bond).

ProBuild's Complaint sufficiently alleges these elements. First, ProBuild has alleged that it supplied materials to TAA for the Project, which the U.S. government awarded TAA in exchange for TAA's execution of a payment bond. Compl. ¶¶ 3-5. Second, ProBuild has alleged that it was not paid for all materials furnished to TAA between November 2010 and March 2011. Id. ¶¶ 5-6. Third, ProBuild alleges that it supplied the materials for use on the Project, and invoices Plaintiff has provided in support of its claim for damages show that the materials it supplied were sold directly to TAA and shipped to the Project site. Id. Ex., at 5-19. Fourth, ProBuild states that it last supplied materials to TAA in March 2011. Id. ¶ 5. It filed its Complaint in August of 2011, less than six months later.  Accordingly, ProBuild has stated a claim for relief against TAA under the Miller Act.

### B. Sufficiency of Allegations in Count II

As an initial matter, the Court must apply Virginia law, including Virginia's choice-of-law rules, to ProBuild's claims in Count II because it is exercising supplemental jurisdiction over them. See Johnson v. Hugo's Skateway, 974 F.2d 1408, 1416 n.7 (4th

Cir. 1992); Brown v. Mitchell, 327 F. Supp. 2d 615, 628 n.27 (E.D. Va. 2004).

The Credit Agreement and Personal Guaranty both contain a choice-of-law provision stating that "[a]ny sales that result from an extension of credit by Seller shall be construed under the laws of the state where the shipment of goods originated." ECF No. 27 at 8-9. As previously noted, the invoices ProBuild has provided in support of its request for damages indicate that it shipped goods from its retailer in Chesapeake, Virginia. "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances." Colgan Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270, 275 (2007). No unusual circumstances exist in this case. See Paul Bus. Sys., Inc. v. Cannon U.S.A., Inc., 397 S.E.2d 804, 807 (Va. 1990) (explaining that Virginia courts enforce choice of law provisions in contracts "unless the party challenging enforcement establishes that such provisions are unfair or unreasonable, or are affected by fraud or unequal bargaining power"). Accordingly, the Court will apply Virginia law to determine whether ProBuild has stated a claim upon which relief can be granted against TAA and Hartman.

Although Count II does not expressly state grounds for relief, ProBuild apparently seeks to recover against TAA pursuant to the Credit Agreement and against Hartman pursuant to the Personal Guaranty.

-13-

## 1. Breach of the Credit Agreement

To recover against TAA under the Credit Agreement, ProBuild must allege a claim for breach of contract. In Virginia, the elements of a claim for breach of contract are: (1) a legally enforceable obligation of the defendant to the plaintiff, (2) a violation or breach of that obligation by the defendant, and (3) an injury or harm to the plaintiff caused by the defendant's breach. Ulloa v. QSP, Inc., 624 S.E.2d 43, 48 (Va. 2006).

ProBuild has alleged a claim for breach of contract. In examining the sufficiency of a complaint, courts may look to documents incorporated into the complaint by reference. See Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 176 (4th Cir. 2009). ProBuild has alleged that TAA entered into a Credit Agreement with ProBuild on November 4, 2010. Compl. ¶¶ 12, 15. ProBuild attached the Credit Agreement to its Complaint. Compl. Ex., at 3; see ECF No. 27 at 8. The Credit Agreement lists Tommy Abbott & Associates, Inc., as the applicant. It is signed and dated November 4, 2010, by Tommy Abbott as secretary and Wendel Hartman as vice president. Id. The Credit Agreement provides that:

> Applicant agrees to pay to the order of Seller: (1) all
> invoices . . . (2) default interest on any delinquent
> invoices at a rate of eighteen percent per annum[6] or the
> interest rate of default interest allowed in the state
> where the goods are sold, whichever is lower; and (3) all

---

[6] Each invoice contains the statement: "A FINANCE CHARGE OF 1.50% PER MONTH WILL BE ASSESSED ON PAST DUE INVOICES," which amounts to an interest rate of eighteen percent per year.

> costs of collecting delinquent invoices and default
> interest, including court costs, reasonable attorney
> fees, and collection agency fees.

Id.

ProBuild has alleged that it supplied TAA materials for the Project from November 2010 through March 2011, but that TAA failed to pay invoices from this period in full. Compl. ¶¶ 5-6. Pursuant to the terms of the Credit Agreement, unpaid invoices are considered delinquent if not paid by the "tenth day of the month following sale." ECF No. 27 at 8. ProBuild attached an account statement dated April 30, 2011, to its Complaint showing a balance on TAA's account of $ 47,994.75 due May 10, 2011. Compl. Ex, at 1. ProBuild alleges that TAA failed to pay the balance "although demand has been made." Compl. ¶ 7.

It is clear from the allegations in ProBuild's Complaint and the attached documentation that (1) the Credit Agreement executed between TAA and ProBuild established a legally enforceable obligation; (2) TAA's failure to pay the balance on its account to ProBuild constituted a breach of that obligation; and (3) ProBuild has been injured by TAA's breach to the extent that it supplied materials for which it has not been paid. Accordingly, ProBuild has stated a claim for breach of contract against TAA upon which relief can be granted.

## 2. Recovery on the Personal Guaranty

An action against a guarantor is independent from an action against the principal debtor. See McDonald v. Nat'l Enters., Inc., 547 S.E.2d 204, 207 (Va. 2001) ("In an action to enforce an independent contract of guaranty, the obligee is proceeding on the guaranty, not on the underlying note."). Accordingly, to recover against Hartman, as guarantor of the Credit Agreement between TAA and ProBuild, ProBuild's complaint must allege (1) the existence and ownership of the guaranty contract; (2) the terms of the primary obligation and default on that obligation by the debtor; and (3) nonpayment of the amount due from the guarantor under the terms of the guaranty contract."[7] Id. Count II contains sufficient facts to state a claim for recovery on a guaranty.

ProBuild alleges that "[a]s consideration for and as an inducement to Probuild [sic] to open a credit with Tommy Abbot A& Associates, Inc., [sic] Defendants Tommy Abbott and Wendel Hartman agreed to personally and unconditionally guarantee to ProBuild the full and prompt payment of all indebtedness of defendant Tommy Abbott & Associates, Inc." Compl. ¶ 13. ProBuild further alleges that it accepted the Personal Guaranty of Abbott and Hartman and established a credit account with TAA. Compl. ¶ 14. ProBuild attached a copy of the Personal Guaranty signed by Abbott and

---

[7] By the terms of the Personal Guaranty, Hartman waived notice of TAA's nonpayment. ECF No. 27 at 9.

-16-

Hartman to its Complaint. Compl. Ex., at 2. These facts establish the existence and ownership of a guaranty contract between ProBuild and Hartman.

By attaching the Credit Agreement that Abbott and Hartman signed on behalf of TAA and alleging that TAA has an outstanding balance for unpaid invoices, ProBuild has established the terms of the primary obligation and TAA's default. The Personal Guaranty provides that

> the undersigned guarantor ("Guarantor"), jointly and severally, if more than one, hereby warrants and unconditionally guarantees to Seller the full and prompt payment when due of all indebtedness, obligations and liabilities of Applicant (as named in the within application for credit) to Seller, including without limitation, all invoiced amounts, all default interest on any delinquent invoices and all costs of collecting delinquent invoices and default interest, including court costs, reasonable attorney fees, and collection agency fees . . . .

ECF No. 27 at 9. ProBuild also attached a copy of the Credit Application that TAA completed to its Complaint. Compl. EX., at 4; ECF No. 27 at 7. By alleging that Hartman failed to pay amounts owed by TAA upon demand from ProBuild and providing the terms of the Credit Agreement and Personal Guaranty, ProBuild has sufficiently pled nonpayment of the amounts alleged.

Having reviewed ProBuild's Complaint and the documents incorporated by reference, the Court finds that ProBuild has sufficiently pled claims for breach of contract against TAA and

-17-

right to recovery under a guaranty against Hartman pursuant to Rule 8 of the Federal Rules of Civil Procedure.

## V.   **APPROPRIATE RELIEF**

Upon request for default judgment, a court may not award an amount in excess of that sought in the pleadings and must make an independent determination of the appropriate amount of damages to be awarded. See Fed. R. Civ. P. 8(a)(6); 54(c). ProBuild's Complaint and its Motion for Default Judgment seek damages in the amount of $46,661.98, with interest of eighteen percent (18%) per annum, from April 30, 2011, as provided in the Credit Agreement, attorney's fees of $11,665.00. Pl.'s Mot. for Default J. 1-2. ProBuild seeks relief against TAA pursuant to the Miller Act and Credit Agreement and relief against Hartman pursuant to the Personal Guaranty.

The Miller Act provides that an aggrieved party may bring action "on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due." 40 U.S.C. § 3133(b)(1). Remedies under the Miller Act are governed by federal law. F. D. Rich Co. Inc. v. United States f/u/o Indus. Lumber Co., 417 U.S. 116, 126 (1976). The Miller Act does not explicitly provide for recovery of attorney's fees or interest, and under the "American Rule," attorney's fees are generally not recoverable in the absence of a statutory provision. See id. Nevertheless, the Fourth Circuit

-18-

and other circuits have recognized an exception to this general rule where the contract between the bond principal and the subcontractor or materialman provides for attorney's fees and interest. See U.S. ex rel. Maddux Supply Co. v. St. Paul Fire & Marine Ins. Co., 86 F.3d 332, 336 (4th Cir. 1996) (listing cases).[8]

The Credit Agreement and Personal Guaranty entitle ProBuild, as seller, to payment of the principle debt, interest on delinquent invoices at a rate of eighteen percent per annum, and collection costs, including reasonable attorney's fees. ECF No. 27 at 8-9. Accordingly, both the Miller Act and agreements at issue in this case authorize the relief sought.

---

[8] Prior to amendment in 2002, the Miller Act provided that individuals aggrieved under the Act were entitled to sue on the payment bond "for the sum or sums justly due." 40 U.S.C. § 270b(a) (2000) (current version at 40 U.S.C. § 3133(b)(1)). Because of its remedial nature, the Miller Act is to be interpreted liberally. See F. D. Rich Co., 417 U.S. at 124; Maddux Supply Co., 86 F.3d at 332. Following this precept, the Fourth Circuit held in Maddux Supply Company, that a subcontractor's supplier was entitled to attorney's fees and interest from the payment bond principal and surety under the Miller Act's 'sums justly due' phrase where the contract between the supplier and the subcontractor provided for them. 86 F.3d at 336. Although the current Miller Act provides only for "amounts due," 40 U.S.C. § 3133(b)(1), "the 2002 amendments to the [Miller] Act were not intended to change the substance of the Act." U.S. ex rel. Acoustical Concepts, Inc. v. Travelers Cas. & Sur. Co. of Am., 635 F. Supp. 2d 434, 439 n.6 (E.D. Va. 2009). Accordingly, courts continue to award attorney's fees and interest to Miller Act claimants where the underlying contract provides for them. See, e.g., U.S. ex rel. Thyssenkrupp Safeway, Inc., v. Tessa Structures, LLC, 1:10cv512, 2011 WL 2633902, at *1 (E.D. Va. July 5, 2011).

## A. **Principal And Interest**

The invoices ProBuild has submitted show that the principal of TAA's debt as of April 30, 2011, was $46,661.98. Pl.'s Resp. to Feb. 10, 2012 Ct. Order 4-19; ECF No. 22. The interest rate in the Credit Agreement is eighteen percent per annum, or pursuant to the invoices, 1.50% per month.  Accordingly, the Court finds that ProBuild is entitled to recover, against TAA and Hartman, jointly and severally, $46,661.98 plus interest at a rate of 1.50% per month from April 30, 2011 through the date on which the United States District Judge enters an Order to that effect.

## B. **Attorney's Fees**

ProBuild seeks $11,665.00 in attorney's fees. The Credit Agreement and Personal Guaranty provide for "recovery of all costs of collecting delinquent invoices and default interest, including . . . reasonable attorney fees." Virginia and federal law for calculating the reasonableness of attorney's fees is substantially similar. See Signature Flight Support Corp. v. Landlow Aviation Ltd. P'hip, 730 F. Supp. 2d 513, 519 n.3 (E.D. Va. 2010). The party seeking attorney's fees bears the burden of demonstrating the reasonableness of the fees requested. Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990); Cook v. Andrews, 7 F. Supp. 2d 733, 736 (E.D. Va. 1998); Chawla v. BurgerBusters, Inc., 499 S.E.2d 829, 833 (Va. 1998).

On March 2, 2012, the Court ordered ProBuild to "file an affidavit and supporting materials, as it may be advised, addressing the reasonableness of attorney's fees requested in this matter." ECF No. 23. ProBuild has submitted an affidavit from Counsel Glen W. Thompson, Esq., and Ledger Report, which Counsel contends supports a request for $11,203.00 in fees. Glen W. Thompson Aff. ¶¶ 7-9, ECF No. 28 at 2-3. This amount includes fees already incurred ($8,453.01) and those likely to be incurred upon execution of the default judgment against TAA and Hartman in Tennessee ($2,250.00). Id. Thompson's affidavit states that he has twenty-nine years of experience as an attorney, twenty-five of which has been in the area of creditor's rights and commercial collections. Id. ¶ 2. The affidavit also states that ProBuild has agreed to pay Thompson $275.00 per hour to collect sums owed from TAA and Hartman. Id. ¶ 6. It does not state the number of hours Thompson has thus far expended in the matter, but states that a minimum of ten additional hours will be required. Id. ¶ 8. The Ledger Report attached to the affidavit comports with Thompson's representations but lists nothing more than the dates on which work was performed and the amount billed. These representations fail to support ProBuild's request for attorney's fees.

As a starting point in the reasonable fee calculus, district courts multiply the number of reasonable hours expended by a reasonable hourly rate. Robinson v. Equifax Info. Servs., LLC, 560

F.3d 235, 243 (4th Cir. 2009). Twelve factors guide courts in

determining whether the time expended and the hourly rate charged

was reasonable:

> (1) the time and labor expended; (2) the novelty and
> difficulty of the questions raised; (3) the skill
> required to properly perform the legal services rendered;
> (4) the attorney's opportunity costs in pressing the
> instant litigation; (5) the customary fee for like work;
> (6) the attorney's expectations at the outset of the
> litigation; (7) the time limitations imposed by the
> client or circumstances; (8) the amount in controversy
> and the results obtained; (9) the experience, reputation
> and ability of the attorney; (10) the undesirability of
> the case within the legal community in which the suit
> arose; (11) the nature and length of the professional
> relationship between attorney and client; and (12)
> attorneys' fees awards in similar cases.[9]

Id. at 243-44 (quoting Barber v. Kimbrell's Inc., 577 F.2d 216, 226

n.28 (4th Cir. 1978)).

Factors (1)-(3), (7) and (9) relate generally to the question

of whether time expended was reasonable. Yet, the only evidence

ProBuild has produced in this regard is the Ledger Report listing

amounts billed, from which the Court must deduce time expended, and

Thompson's statements as to his qualifications in the field of

creditor's rights. Nothing in the Ledger Report or Thompson's

affidavit speaks to the novelty and difficulty of the instant

---

[9] Factors considered under Virginia law are substantially similar.
See Chawla, 499 S.E.2d at 833 ("[A] fact finder may consider, inter
alia, the time and effort expended by the attorney, the nature of
the services rendered, the complexity of the services, the value of
the services to the client, the results obtained, whether the fees
incurred were consistent with those generally charged for similar
services, and whether the services were necessary and
appropriate.").

action, the skill required to properly perform the legal services rendered, or the time limitations imposed by the client or circumstances. Accordingly, the Court cannot determine on the record before it whether the time Thompson expended on this matter was reasonable.

Moreover, to demonstrate that an hourly rate is reasonable, the party requesting fees must produce "specific evidence of the 'prevailing market rates in the relevant community' for the type of work for which he seeks an award." Spell v. McDaniel, 824 F.2d 1380, 1402 (4th Cir. 1987) (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)). Acceptable evidence includes "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with their work in the relevant community." Robinson, 560 F.3d 235, 245 (4th Cir. 2009). An attorney's own affidavit attesting to the reasonableness of fees charged is insufficient. See Plyler, 902 F.2d at 277. Under this standard, Thompson's affidavit is wholly inadequate to support the billing rate of $250.00 per hour.

For the aforementioned reasons, ProBuild's request for $2,750.00 in prospective attorney's fees based on Thompson's estimation that judgment execution will require an additional ten hours of labor is equally unsupported.[10] Accordingly, although the

---

[10] Virginia law specifically contemplates recovery of prospective attorney's fees. See Mullins, 403 S.E.2d at 335 ("If future

Court finds that ProBuild is entitled to reasonable attorney's fees pursuant to the Miller Act and the agreements in this matter, the Court cannot determine, at this juncture, whether the specific amount ProBuild has requested is, in fact, reasonable.

## VI.    RECOMMENDATION

ProBuild filed the instant Motion for Default Judgment against TAA and Hartman to recover the principal, interest, and attorney's fees that TAA and Hartman owe ProBuild pursuant to the Credit Agreement and Personal Guaranty executed November 4, 2010. ProBuild has sufficiently stated claims against TAA pursuant to the Miller Act and Virginia law governing contracts and against Hartman pursuant to Virginia law governing personal guaranties.  For the foregoing reasons, the Court RECOMMENDS:

1)    Plaintiff ProBuild Company, LLC's Motion for Default Judgment (ECF No. 17) be GRANTED;

2)    Judgment be ENTERED in favor of ProBuild Company, LLC and against Defendants Tommy Abbott & Associates, Inc. and Wendel Hartman, jointly and severally, for the principal amount of $46,661.98;

3)    Judgment be ENTERED in favor of ProBuild Company, LLC and against Tommy Abbott & Associates, Inc. and Wendel Hartman, jointly

---

services of an attorney will be required in connection with a case, the fact finder should make a reasonable estimate of their value.").

and severally, for interest of 1.50% per month on the amount of $46,661.98, compounded monthly, from April, 30 2011, until entry of judgment in this matter; and

4) ProBuild be DIRECTED to file a motion requesting reasonable attorney's fees pursuant to Rule 54(d) within 90 days of entry of judgment. ProBuild's petition shall include a breakdown of hours billed and other information relevant to the factors set forth in Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir. 1978), and other applicable law set forth in this Report and Recommendation.

## VII. REVIEW PROCEDURE

By copy of this Report, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedures:

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within 14 days from the date of mailing of this Report to the objecting party, computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(d) of said rules. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2).

2.    A district judge shall make a de novo determination of those portions of this Report or specified findings or recommendations to which objection is made.    See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.    Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

_____
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

April 11 , 2012