**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

```
┌─────────────────────────────┐
│         FILED               │
│  ┌───────────────────────┐  │
│  │     JUL 19 2012        │  │
│  └───────────────────────┘  │
│  CLERK, U.S. DISTRICT COURT │
│        NORFOLK, VA          │
└─────────────────────────────┘
```

UNITED STATES OF AMERICA FOR
THE USE AND BENEFIT OF PROBUILD
COMPANY, LLC, et al.,

      Plaintiffs,

v.                        Case No.: 2:11cv451

EDMOND SCARBOROUGH,

      Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Edmund Scarborough's (Scarborough) Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiffs are the United States of America for the use and benefit of ProBuild Company, LLC, and ProBuild Company, LLC ("ProBuild"). Defendant is the surety on the payment bond at issue in this matter.

On August 8, 2011, ProBuild filed suit against Scarborough and his codefendants, Tommy Abbott & Associates, Inc. ("TAA"), Tommy Abbott ("Abbott"), and Wendel Hartman ("Hartman"), seeking to recoup money allegedly owed for materials supplied to TAA on a government construction project.[1] Scarborough answered ProBuild's

---

[1] Abbott was voluntarily dismissed from the suit on January 11, 2012. ECF No. 14. Default judgment was entered against TAA and Hartman on May 3, 2012. ECF No. 32.

Complaint on September 19, 2012, ECF No. 9, and filed a Motion for Judgment on the Pleadings on May 9, 2012, ECF No. 34.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), Scarborough's Motion for Judgment on the Pleadings was referred to the undersigned United States Magistrate Judge. ECF No. 37. After the motion was fully briefed, the Court held a hearing on July 10, 2012. At hearing, Glen Thompson, Esq., represented ProBuild, and Michael Miles, Esq., and Constantinos Panagopoulos, Esq., represented Scarborough. Sharon Borden was the official court reporter.

## I.   **FACTUAL BACKGROUND**

According to ProBuild's Complaint, TAA entered into a contract with the United States Department of the Navy to perform construction on the "Dam Neck Cottages" in the City of Virginia Beach, Virginia (the "Project"). Compl. ¶ 2, ECF No. 1. Pursuant to the Miller Act, 40 U.S.C. §§ 3131 et. seq., TAA furnished a payment bond ("the Bond") to the United States. Compl. ¶¶ 3-4, Ex. 1 at 5.

### A. **The Payment Bond**

The Bond is printed on Standard Form 25A ("SF 25A), as prescribed by 48 C.F.R. § 28.106-1(c) and § 53.301-25-A. Compl. Ex. 1 at 5. The Bond's reference number is ABBOTTPP12172009B. Id. It was executed on December 17, 2009, in favor of contract number NAVMWR-09-C-005 (the "Contract"), which corresponds to the contract number of the Project. Id. Its penal sum is $1,839,000.00. Id.

-2-

Steven A. Golia signed the Bond on behalf of Scarborough as attorney-in-fact. Id. Scarborough's name is printed in typeface below the heading "Individual Surety(ies)." Id. Kathy Abbott signed the Bond as president of TAA.[2] Id. Her name is printed in typeface below the heading "Principal." Id.

Under "OBLIGATION" the Bond provides:

> We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum for payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. . . . [E]ach Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit is indicated, the limit of liability is the full amount of the penal sum.

Id. (emphasis added). Under "CONDITIONS" the Bond provides:

> The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made.

Id. (emphasis added). Beneath the conditions section, the Bond reads "WITNESSES," and states, "[t]he Principal and Surety(ies) executed this payment bond and affixed their seals on the above

---

[2] The copy of the Bond that ProBuild submitted with its Complaint is not signed by TAA; however, Scarborough has attached a copy of the first page of the Bond containing the signature of Kathy Abbott, TAA's president, to its Reply to the instant motion. Def.'s Reply Ex. 1, ECF No. 38 attach. 1.

date." Id. This statement is followed by signature blocks for the principal and sureties. Id. at 5-6.

Instructions for SF 25A are located on page two of the form, after the signature blocks. Def's Mot. for J. on the Pleadings Ex. A at 5. Instruction 3(b) reads:

> Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

Id.

## B. Affidavit of Individual Surety

ProBuild did not attach the Affidavit of Individual Surety ("Affidavit") to its Complaint or reference it therein, but Scarborough has provided it in support of the instant motion. Def.'s Mot. for J. on the Pleadings Ex. A at 6. The Affidavit is printed on Standard Form 28 ("SF 28"), as prescribed by 48 C.F.R. § 28.106-1(e) and § 53.301-28. It has a number of fields that the affiant must complete. Albemarle County, Virginia is listed as the place of execution, and Edmund C. Scarborough is listed as the affiant. Id.

The oath that the affiant must take states that "[t]his affidavit is made to induce the United States of America to accept me as surety on the attached bond." Id. Field number eight asks the surety to "identify all mortgages, liens, judgments, or any other

-4-

encumbrances involving subject assets including real estate taxes due and payable." Id. In response, Scarborough typed "None." Id. Typed beneath "None" is the following:

> NOTE: . . . . This bond is only valid for one year from the date indicated on its face. Any renewal or extension of that term will be at the sole discretion of the surety upon request of the obligee and subject to payment of additional fees. For Labor and Materialmen's Payment Bonds, payment for work outside the term of this bond is not protected by this bond.

Id.

The bond and contract number listed in field eleven correspond to the Project and the payment bond at issue. The Affidavit is signed by Steven A. Golia as Scarborough's attorney-in-fact. Id. Field twelve contains information pertaining to the notary. Id. The date the oath was administered is listed as August 5, 2008, and the place of administration is listed as Cherry Hill, NJ. Id.

### C. **Pleadings**

ProBuild seeks to exercise its remedies under the Miller Act and recoup its losses from Scarborough as surety on the Bond. ProBuild filed its Complaint in this Court on August 12, 2011. In its Complaint, ProBuild alleges that it furnished materials and supplies to TAA for the Project from November 2010 through March 2011. Compl. ¶ 5. Although TAA made payments on Project invoices from time to time, TAA allegedly left an unpaid balance on its account, the principal of which is $46,661.98. Id. ¶ 16. ProBuild

attached a billing statement, personal guaranty, credit agreement, commercial credit application, and a copy of the first page of SF 25A, on which the Bond is printed, to its Complaint. Compl. Ex. 1. The first entry in the billing statement is dated January 11, 2011. Id.

In its Answer, Scarborough raised the following relevant defenses: "Plaintiff fails to state claims or causes of action upon which relief may be granted," and "Plaintiff's claims and causes of action are barred, in whole or in part, by expiration of the bond and/or the pledge of, and/or the security interest in, the asset underlying the bond." Answer 3, 5.

## II.  **DISCUSSION**

Scarborough's principal argument is that the one-year limitation typed in field eight of the Affidavit limited the duration of the Bond to one year from the date of execution. Because the Bond was executed on December 17, 2009, Scarborough argues that it expired on December 17, 2010. Def.'s Mot. for J. on the Pleadings 2. Scarborough further argues that the billing statement ProBuild attached to its Complaint shows that no inventory was shipped until January 11, 2011, after the alleged expiration of the Bond. Id. Accordingly, Scarborough maintains that the Bond was not in effect when ProBuild began shipping materials, and therefore, ProBuild has failed to state a claim against Scarborough. Id.

In response, ProBuild has highlighted Scarborough's criminal record and attacked the veracity of the documents that Scarborough submitted in support of the instant motion.[3] ProBuild also argues that the Bond does not incorporate the one-year limitation supplied in the Affidavit and that, even if that limitation governs the Bond, ProBuild began supplying materials to TAA prior to December 17, 2010.

## A. **Rule 12(c) Standard**

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The question presented in a Rule 12(c) motion is the same as that in a Rule 12(b)(6) motion: whether the complaint states a claim upon which relief can be

---

[3] These documents purportedly show that Scarborough was convicted of grand theft, grand theft in the second degree, and nine counts of obtaining property in exchange for worthless checks in various jurisdictions of Florida in the 1980s and that he was not licensed to issue bonds in the Commonwealth of Virginia at the time he issued the bond in question. Pl.'s Resp. 4, Exs. A–C; see Va. Code. Ann. § 38.2-2402 (providing that no fidelity and surety insurer shall transact business of fidelity insurance or surety insurance without first obtaining a license from the Commission to transact that class of insurance."). They also call into question the sufficiency of the assets that Scarborough pledged as security for the Bond. The Court notes that in Tip Top Construction, Inc., v. United States, 563 F.3d 1338, 1347 (2009), which was decided prior to the issuance of the bond in question, the Federal Circuit held that the "previously mined, extracted, stockpiled and marketable coal" that Scarborough had pledged as assets for a bid bond was not an acceptable asset under the Federal Acquisition Regulations. The asset pledged for the instant payment bond is an irrevocable trust, the res of which is "surface, previously mined, coal." Def.'s Mot. for J. on the Pleadings Ex. 1 at 15.

granted.[4] See Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009);
Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999). In
examining the sufficiency of a complaint, the Court must "accept
the facts alleged in [the] complaint as true and construe them in
the light most favorable to the plaintiff." Coleman v. Md. Court of
Appeals, 626 F.3d 187, 188 (4th Cir. 2010). Nevertheless,
threadbare "legal conclusion[s] . . . [are] not entitled to the
assumption of truth." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950
(2009). Ultimately, the complaint must state sufficient facts from
which the Court can infer the plausibility rather than the mere
possibility that the defendant is liable for the alleged
misconduct. Id. at 1949; Coleman, 626 F.3d at 190; Francis v.
Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009); see Fed. R. Civ. P.
12(b)(6).

Generally, an affirmative defense may only be dealt with in a
motion to dismiss where "all facts necessary to the [ ] defense
'clearly appear[ ] on the face of the complaint.'" Goodman v.

---

[4] The difference between a motion filed pursuant to Rule 12(b)(6)
and a motion filed under Rule 12(c) is timing. Whereas a 12(b)(6)
motion may be filed before a defendant files its answer, Fed. R.
Civ. P. 12(b)(6), a Rule 12(c) motion is properly filed after the
time for filing pleadings has closed, Fed. R. Civ. P. 12(c); see
Fed. R. Civ. P. 7 (listing acceptable pleadings). When a defendant
seeks to dismiss a complaint for failure to state a claim after it
files its answer, courts construe the motion as one under Rule
12(c). See Burbach Broad. Co. v. Elkins Radio Corp., 278 F.3d 401,
405-06 (4th Cir. 2002); Fed. R. Civ. P. 12(h)(2)(B) (providing that
the defense of failure to state of claim may be raised "by a motion
under Rule 12(c)").

Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)). Nevertheless, in weighing the sufficiency of a complaint, a court may consider facts contained in documents incorporated by reference or attached to the complaint without converting the motion to one for summary judgment. See Fed. R. Civ. P. 10(c); see e.g., New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 18 F.3d 1161 (4th Cir. 1994) (holding that district court did not err by considering corporate constitution referenced in complaint in deciding motion to dismiss); HQM, Ltd. v. Hatfield, 71 F. Supp. 2d 500, 502 (D. Md. 1999). This is so even when the defendant submits the referenced document with its motion to dismiss, provided that the authenticity of the document is unquestioned. Gasner v. Cnty. of Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995), aff'd on other grounds, 103 F.3d 351 (4th Cir. 1996); see Darcangelo v. Verizon Commc'ns, Inc., 292 F.3d 181, 195 n.5 (4th Cir. 2002) (noting that when a plaintiff relies upon an agreement in his complaint, the court may consider the agreement in ruling on a motion to dismiss); Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir. 1998) ("A district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'")(quoting Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994)). Accordingly,

-9-

the question is whether the facts necessary to prove that the Bond expired prior to the time ProBuild began furnishing materials for the Project are apparent on the face of the pleadings and the documents incorporated therein.   The Court finds that they are not.

### B.   Analysis

The Miller Act provides:

> Before any contract of more than $100,000 is awarded for the construction, alteration, or repair of any public building or public work of the Federal Government, a person must furnish to the Government . . . . A payment bond with a surety satisfactory to the officer for the protection of all persons supplying labor and material in carrying out the work provided for in the contract for the use of each person. . . ."

40 U.S.C. § 3131(b). The bond becomes binding when the contract is awarded. Id. The Miller Act also permits individuals who have furnished labor or materials pursuant to a contract for which a payment bond has been furnished to sue on the payment bond to recover unpaid sums. See id. § 3133(b)(1). The purpose of these provisions is to protect materialmen and laborers who provide services on government contracts but are prevented by sovereign immunity from acquiring mechanics liens against public buildings. See J.W. Bateson Co., Inc. v. U.S. ex rel. Bd. of Trustees of Nat'l Automatic Sprinkler Indus. Pension Fund, 434 U.S. 586, 589 (1978). Because of its remedial nature, courts interpret the Miller Act liberally. See F. D. Rich Co. Inc. v. United States f/u/o Indus. Lumber Co., 417 U.S. 116, 124 (1976); U.S. ex rel. Maddux Supply

Co. v. St. Paul Fire & Marine Ins. Co., 86 F.3d 332, 332 (4th Cir. 1996).

The basis of Scarborough's motion—that the Bond had expired by the time ProBuild began delivering materials to TAA—is an affirmative defense.  Accordingly, the facts necessary to rule on this defense must be apparent on the face of the pleadings. See Demetry v. Lasko Prods., Inc., 284 F. App'x 14, 15 (4th Cir. 2008) (unpublished decision) (explaining in the context of a 12(c) motion that a "district court may reach the merits of an affirmative defense when ruling on a motion to dismiss 'if all facts necessary to the affirmative defense clearly appear on the face of the complaint.'" (quoting Goodman, 494 F.3d at 464)).  "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Accordingly, the Court may consider the Bond and billing statement in deciding the instant motion because ProBuild attached it to its Complaint. See Fayetteville Invs. v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991) (approving consideration of performance bond and construction contract upon motion to dismiss because they were incorporated by reference into the complaint); Simons v. Montgomery Cnty. Police Officers, 762 F.2d 30, 31 (4th Cir. 1985); Kline, 886 F. Supp. at 1294; Fed. R. Civ. P. 10(c). Scarborough argues that the Court must also consider the Affidavit because even though

ProBuild did not attach it to the Complaint its terms are incorporated into the Bond.

The Court finds that it would be improper to consider the Affidavit at this stage because the Affidavit's authenticity is contested, and it is not apparent that the Bond and the Affidavit must be read together.

In order for the Court to consider the Affidavit that Scarborough supplied with his 12(c) motion, it must be of unquestioned authenticity. Gasner, 162 F.R.D. at 282. ProBuild, however, challenges its authenticity, and the Court finds merit in this challenge. The Affidavit is signed by Steven A. Golia as Scarborough's attorney-in-fact and is dated August 5, 2008. Def.'s Mot. for J. on the Pleadings Ex. A at 6. As ProBuild points out, whether Golia actually possessed power of attorney for Scarborough at the time the Affidavit was purportedly executed is questionable. According to the "Power of Attorney For Edmund Scarborough," Golia was not appointed as Scarborough's attorney-in-fact until June 15, 2009, almost one year after Golia purportedly executed the Affidavit on Scarborough's behalf. Id. at 8. Similarly, the Affidavit appears to have been executed almost a year-and-a-half before the Bond. Id. at 4, 6. Moreover, the notary who witnessed the Affidavit was apparently located in Cherry Hill, New Jersey; however, the Affidavit lists Albemarle County, Virginia as its place of execution. Id. at 6.

-12-

At hearing, Scarborough's counsel suggested that these inconsistencies were merely typographical errors. The Court, however, finds that these inconsistencies sufficiently call into question the authenticity of the Affidavit and its effect as a legal instrument. Accordingly, it is not appropriate for the Court to consider the Affidavit it in determining whether ProBuild has stated a claim against Scarborough.

Even if the Court did not question the Affidavit's authenticity, it is not apparent that the Affidavit and the Bond constitute a single legal instrument. A bond is a contract. Elm Haven Constr. Ltd. P'ship v. Neri Constr. LLC, 376 F.3d 96, 100 (2d Cir. 2004). In this case, federal law governs the construction of the Bond because the Miller Act creates the rights and provides the remedies at issue. See U.S. f/u/o Nova Enter., Inc. v. Reliance Ins. Co., 977 F.2d 575 (Table), 1992 WL 296346, at *1 (4th Cir. 1992); U.S. ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc., 290 F.3d 1199, 1206 (9th Cir. 2002); U.S. f/u/o Modern Elec., Inc. v. Ideal Elec. Sec. Co., 868 F. Supp. 10, 14 (D.D.C. 1994) (quoting Am. Auto Ins. Co. v. United States ex rel. Luce, 269 F.2d 406, 408 (1st Cir. 1959)). When a bond references another instrument, the bond must be interpreted in accordance with the terms of that instrument. See Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1467 n.6 (4th Cir. 1991) (explaining that contract terms were incorporated by reference into the bond); New

-13-

Amsterdam Cas. Co. v. Moretrench Corp., 35 S.E.2d 74, 77 (Va. 1945) ("Generally, where a bond and another contract or instrument relate to and form one and the same transaction, or the bond refers to such other instrument or is conditioned for the performance of specific agreements set forth therein, such instrument with all its stipulations, limitations or restrictions becomes a part of the bond, and the two should be read together and construed as a whole.").

Scarborough argues that the Bond is incomplete without the Affidavit and that the two must be read together to determine the surety's obligation under the Bond. Scarborough cites U.S. ex rel. Russel Sigler, Inc. v. Associated Mechanical, Inc., No. 2:09-cv-01238, 2010 WL 5100913 (D. Nev. Dec. 8, 2010), in support of this position. In Russel Sigler, the District of Nevada found on summary judgment that Scarborough's obligation as surety was limited to one year based on terms expressed in the "Certificate of Pledged Assets," which accompanied and was integrated into the bond. 2010 WL 51000913 at *4. The court, however, did not explain how it arrived at the conclusion that the payment bond and the Certificate of Pledged Assets should be read as a single document. Accordingly, the case is of little assistance to the Court. Scarborough argues that because Instruction 3(b) on SF 25A requires that SF 28 accompany the payment bond, the Bond incorporates the

-14-

terms of the Affidavit by reference. The Court is not convinced of this position.

In addition to providing a remedy for unpaid subcontractors on federal construction projects, the Miller Act sets forth requirements for individuals bidding on such contracts. See 40 U.S.C. §§ 3131(b), 3132. The Affidavit of Individual Surety plays an important role in this process. Before a contract may be awarded under the Miller Act, each bidder must submit a payment bond, with surety, to the appropriate government contracting officer. See 40 U.S.C. §§ 3131(b); 48 C.F.R. §§ 28.200-28.204. The contracting officer then reviews the bond and the surety to ensure that the assets the surety has pledged are sufficient to protect the interests of laborers and materialmen who perform work on the contract. See id.; 48 C.F.R. § 28.203. Generally, a surety may be an individual or a corporation.[5] Id. § 28.201(a). A corporate surety must be on the Treasury Department's list of certified corporate sureties to be approved as a surety on a Miller Act bond. Id. § 28.202(a)(1). A similar list is not maintained for individual sureties. Accordingly, to assist contracting officers in determining whether to accept an individual surety on a proffered bond, the Federal Acquisition Regulations ("FAR") require that the surety submit SF 28 with the bond. Id. § 28.203(a)-(b). "The

_____

[5] At hearing, ProBuild suggested that the Contract may actually prohibit individuals from serving as sureties.

Government is relying on the validity of the SF 28 information in the event of contractor default of its obligations." Individual Sureties, 53 Fed. Reg. 44,564, 44564 (proposed Nov. 3, 1988) (to be codified at 48 C.F.R. pts. 28, 52, 53). It therefore makes sense that the Government would require SF 28 to accompany any payment bond that a bidder submits to the Government in hopes of securing a contract. However, there is nothing in the Miller Act or the FAR to suggest that this requirement merges the Affidavit of Individual Surety, and representations made therein, with the payment bond.

The FAR make clear that the payment bond and Affidavit of Individual Surety are separate documents. 48 C.F.R. § 28.106-1. The Miller Act provides that a "certified copy of the payment bond and contract for which it has been given" shall be "prima facie evidence of the contents, execution, and delivery of the original." 40 U.S.C. § 3133(a). This section does not reference the Affidavit of Individual Surety, rather, it directs subcontractors to rely on the contract and payment bond as evidence of the surety's obligation. Moreover, whereas the terms of the Bond in this case reference the underlying contract, they do not similarly reference the Affidavit.[6] Nor do they provide any other limitations on the surety's obligation. On the other hand, the oath on in the Affidavit explicitly states that it is made to "induce the United

---

[6] Neither party has furnished the underlying contract at issue in this case.

States of America to accept me as surety on the attached bond." Def.'s Mot. for J. on the Pleadings Ex. A at 6. It would therefore appear that SF 28 is executed for the Government's benefit and consideration and is not intended to be a mechanism by which sureties may modify obligations established in the bond and underlying contract. To the extent that the Miller Act contemplates that a surety's obligation will be apparent from the terms of the contract and payment bond, and the terms of the Bond in this case do not reference the Affidavit, it would be patently unfair and contrary to the Act's remedial purpose to read the Affidavit as limiting Scarborough's liability.

This is not to say that a case for reading the Bond and Affidavit together cannot be made. Rather it is simply not apparent from the face of the Bond that it incorporates the terms of the Affidavit. Accordingly, the Court will not consider the Affidavit at this stage. In the absence of the Affidavit, Scarborough cannot establish the facts necessary to prove his defense.

Finally, even if the Court were to find that the one-year limitation in the Affidavit applies to the Bond, ProBuild's complaint would still survive Scarborough's challenge. The Court must construe the facts alleged in the Complaint in the light most favorable to ProBuild. Coleman, 626 F.3d at 188. The Complaint clearly alleges that ProBuild began supplying materials to TAA prior to December 17, 2010, the alleged date of expiration. Compl.

-17-

¶ 5. Reading the facts in the light most favorable to ProBuild, nothing in the exhibits that ProBuild submitted with its Complaint contradicts this allegation. The fact that the first transaction listed in Exhibit 1 is dated January 11, 2011, does not establish that this was the first date on which ProBuild supplied materials to TAA. Rather, as ProBuild alleges in its response to Scarborough's motion, this date can plausibly be construed as the date on which TAA began carrying a balance on its line of credit with ProBuild. Pl.'s Resp. 9, ECF No. 35 at 9. Accordingly, even if the Court were to find that the Payment Bond expired on December 17, 2010, the Complaint states facts from which the Court can plausibly infer that Scarborough is liable under the Miller Act for at least some of the damages ProBuild has allegedly sustained.

### III. CONCLUSION AND RECOMMENDATION

Scarborough asserts that he is not liable under the Miller Act because the payment bond at issue expired before ProBuild began shipping materials to TAA. Scarborough has raised this argument in a Rule 12(c) Motion, meaning the Court must construe the facts in the Complaint in the light most favorable to ProBuild and must decide the motion based on the pleadings and the documents referenced therein. Because the Bond itself does not limit the duration of the surety's obligation, Scarborough's argument depends on the Court reading the Bond and Affidavit together. The Court finds consideration of the Affidavit improper at this stage because

-18-

of its questionable authenticity and the fact that it is unclear whether the Bond and Affidavit comprise a single document. The face of the Bond contains no limitation on its duration. Accordingly, the facts necessary to prove Scarborough's defense do not appear on the face of the pleadings. However, even if the Court considers the Affidavit and its one-year limitation, the Court finds that ProBuild's Complaint states a plausible claim upon which relief can be granted.

For the foregoing reasons, the Court RECOMMENDS that Defendant's Motion for Judgment on the Pleadings, ECF No. 34, be DENIED.

### III. <u>REVIEW PROCEDURE</u>

By copy of this Report, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedures:

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within 14 days from the date of mailing of this Report to the objecting party, computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(d) of said rules. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2).

-19-

2.    A district judge shall make a de novo determination of those portions of this Report or specified findings or recommendations to which objection is made.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

July 18 , 2012